UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHARLES BURDEN, individually and on behalf of other persons similarly situated,<br><br>            Plaintiff,<br><br>       vs.<br><br>SELECTQUOTE INSURANCE SERVICES, a California corporation; and DOES 1 through 10,<br><br>            Defendants. | Case No:  C 10-05966 SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Dkt. 92 |

The parties are presently before the Court on Plaintiff Charles Burden's unopposed Motion for Preliminary Approval of Class Action Settlement. Dkt. 92. Having read and considered the papers filed in connection with the motion, and finding good cause therefore, the Court GRANTS Plaintiff's motion. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.     BACKGROUND**

   **A.     PRIOR PROCEEDINGS**

Plaintiff previously worked for Defendant SelectQuote Insurance Services ("Defendant" or "SelectQuote") as an insurance sales agent from approximately March 2004 until January 26, 2009. On February 19, 2010, Plaintiff filed a class action complaint

against SelectQuote in San Francisco County Superior Court, and thereafter filed a First Amended Complaint on December 3, 2010. The gist of the lawsuit is that SelectQuote erroneously classified Plaintiff and other insurance agents as exempt from California law and/or the Fair Labor Standards Act ("FSLA"). The FAC alleges four causes of action: (1) failure to pay overtime wages owed under California Labor Code section 510 and California Industrial Welfare Commission Wage Order 4-2001; (2) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, based on the failure to pay overtime wages in accordance with the FLSA[1]; (3) failure to pay all wages owed upon termination under California Labor Code §§ 201 and/or 202; and (4) unfair competition under the UCL.

On December 30, 2010, SelectQuote removed the action under 28 U.S.C. §§ 1441(b) and 1331. Dkt. 1. Following removal, SelectQuote filed a motion to dismiss, which the Court denied on April 4, 2011. Dkt. 22. Plaintiff filed a Motion for Class Certification, Dkt. 28, which was followed by SelectQuote's filing of a Motion for Summary Judgment shortly thereafter, Dkt. 34. On July 19, 2011, the Court issued an order holding Plaintiff's Motion for Class Certification in abeyance pending adjudication of SelectQuote's Motion for Summary Judgment. Dkt. 50.

On January 24, 2012, the Court issued its ruling on SelectQuote's summary judgment motion. 1/24/12 Order, Dkt. 62. The Court concluded that SelectQuote properly classified Plaintiff under California law, and granted summary judgment for SelectQuote on his first cause of action. Id. However, the Court rejected SelectQuote's contention that Plaintiff was properly classified under the FLSA and denied SelectQuote's motion as to Plaintiff's second cause of action under the UCL. The Court also denied SelectQuote's motion as to Plaintiff's third and fourth causes of action to the extent they are predicated on violations of the FLSA. Id.

---

[1] Plaintiff does not bring any claims directly under the FLSA. Rather, he relies on Defendant's alleged violation of the FLSA as the underlying "unlawful" conduct that forms the basis of his UCL claims.

On March 2, 2012, the Court granted SelectQuote's request for leave to file a Motion to Strike Remaining Class Allegations (set forth in the second, third and fourth causes of action) and to defer ruling on Plaintiff's Motion for Class Certification. Dkt. 71. On June 11, 2012, the Court denied SelectQuote's motion to strike. 6/11/12 Order, Dkt. 79. In particular, the Court rejected SelectQuote's contention that Plaintiff's second and fourth causes of action under the UCL could be brought only as a collective action under the FSLA, as opposed to a class action under Rule 23. The Court also disagreed with SelectQuote's argument that Plaintiff's third cause of action for waiting time penalties under California Labor Code § 203 could not be predicated upon violations of the FLSA.

Given the extensive litigation that had taken place, the Court directed the parties to focus their time and resources on settling the action. To that end, the Court referred the action to Magistrate Judge Donna Ryu for a mandatory settlement conference. Id. at 9. The parties were eventually able to reach a settlement before Magistrate Judge Ryu at the third settlement conference held on October 9, 2012. Karasik Decl. ¶ 8, Dkt. 93. The material terms of the settlement are summarized below.

### B.  SUMMARY OF THE PROPOSED SETTLEMENT

Under the terms of the Settlement, Defendant will pay a Gross Settlement Amount of $750,000 on a non-reversionary basis, meaning that the entire amount will be distributed to Class Members and for fees and expenses. The settlement will be distributed to a Settlement class comprised of three proposed three subclasses, as follows:

> a.   The California Insurance Agent Class defined as "all persons who, at any time between February 9, 2006 and March 31, 2012, were employed by Defendant as an Account Manager (also called 'insurance agent') in State of California";
>
> b.   The Nationwide Insurance Agent Class, defined as "all persons who, at any time between February 9, 2006 and March 31, 2012, were employed by Defendant as an Account Manager in the United States"; [and]
>
> c.   The Former Insurance Agent Class defined as "all persons employed by Defendant as an Account Manager in the State of California and whose employment with Defendant ended at any time between February 9, 2007 and October 9, 2012."

1  Settlement Agt. and Release at 10, Dkt. 96.

2  The Settlement permits Plaintiff's counsel to request fees in an amount of up to one-third of the Gross Settlement Amount ($250,000) and to seek an incentive award for Plaintiff in an amount up to $10,000.  Ninety percent (90%) of the Net Settlement Amount (i.e., the Gross Settlement Amount less attorneys' fees, the incentive award and expenses) will be distributed to the California Insurance Agent Class and Nationwide Insurance Agent Class, and ten percent (10%) will be allocated to the Former Insurance Agent Class. Plaintiff's counsel estimates that there are approximately 256 Class Members, and that each will receive at least $1,750.

Plaintiff now moves for preliminary approval of the Settlement.  Dkt. 92.  Defendant has filed a statement of non-opposition.  Dkt. 97.

## II.    DISCUSSION

### A.    PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'"  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003).  In

conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  See Officers for Justice v. San Fran. Civ. Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

Given that some of the aforementioned "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations and citation omitted).   Rather, preliminary approval of a settlement and notice to the proposed class is appropriate:  if  "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)).

The factors set forth in In re Tableware Antitrust Litigation weigh in favor of preliminarily approving the settlement.  First, the settlement resulted from non-collusive negotiations; i.e., a mandatory settlement conference before a Magistrate Judge of this Court.  Second, there are no obvious deficiencies.  To the contrary, the settlement confers tangible monetary benefits to the class—namely, a Gross Settlement Amount of $750,000, with no reversion, that will be distributed to approximately 256 individuals.[2]  Finally, there is no indication that the settlement improperly grants preferential treatment to class representatives or segments of the class.  Finally, based on its experience with similar wage and hour actions, the Court finds that the settlement appears to fall within the range of possible approval.

The above notwithstanding, the Court has some concern regarding Plaintiff's anticipated request for attorneys' fees based on one-third of the Gross Settlement Amount in light of the fact that the benchmark for such an award is 25%.  See In re Bluetooth

---

[2] The Court lauds the parties' agreement to include a non-reversionary clause which enhances the benefit to the Settlement Class.

- 5 -

Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).  Similarly, Plaintiff's request for a $10,000 incentive award is double the amount which this Court has determined is presumptively reasonable.  See e.g., Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau, No. C 07-0362 MHP, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27, 2009) (rejecting a requested $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable").  At the same time, the Court is aware from having presided over the action that this case has engendered significant motion practice and litigation beyond that which is typically observed in wage and hour class actions.  Ultimately, the Court need not resolve the matter at the preliminary approval stage, since both requests will be finally determined at the fairness hearing.  However, Plaintiff should be mindful of addressing these issues in connection with his motions for attorneys' fees and for final approval.

### B.    CONDITIONAL CLASS CERTIFICATION

Plaintiff seeks conditional certification of a settlement class under Rule 23(a) and (b)(3).  A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) *and* additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where there are common questions of law or fact predominate and class resolution is superior to other available methods.  Fed. R. Civ. P. 23(b)(3).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1977); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

The requirements for class certification are satisfied based on the record presented. First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ.P. 23(a)(1). The class also must be "ascertainable." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, Plaintiff estimates that there are 256 Class Members. Pl.'s Mot. at 5. This is sufficient to satisfy Rule 23's numerosity and ascertainability requirements. See Immigrant Assistance Project of Los Angeles Cnty. Federation of Labor (AFL-CIO) v. I.N.S. 306 F.3d 842, 869 (9th Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members).

Second, "[c]ommonality focuses on the relationship of common facts and legal issues among class members." Id. Rule 23(a)(2) should be construed permissively, meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. (quoting Hanlon, 150 F.3d at 1019). In the instant case, the issues facing the class arise from common questions involving whether Defendant's policies violate the FLSA and the UCL. This is sufficient to satisfy the commonality requirement. See Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 633 (S.D. Cal. 2010) ("Plaintiffs have identified common factual questions, such as whether Defendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement for installation tool expenses, and common legal questions, such as Defendants' obligations under California Labor Code. . . . These commonalities are sufficient to satisfy Rule 23(a)(2).").

Third, Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Here, there is no dispute that the injuries suffered by Plaintiff are the same as those of the class; namely, he was not properly paid overtime

1 wages.  This is sufficient for purposes of meeting the typicality requirement.  See Dilts, 267
2 F.R.D. at 633.
3     Fourth, Rule 23(a)(4) permits certification of a class action only if "the
4 representative parties will fairly and adequately protect the interests of the class."  Fed. R.
5 Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent a class,
6 courts must resolve two questions: (1) do the named plaintiffs and their counsel have any
7 conflicts of interest with other class members and (2) will the named plaintiffs and their
8 counsel prosecute the action vigorously on behalf of the class?"  Ellis, 657 F.3d at 985.  At
9 this juncture, there is no indication that there is any conflict between the class and Plaintiff
10 and/or his counsel.  In addition, the record shows that they have been vigorously litigating
11 this case in furtherance of the interests of the class.
12     Finally, Plaintiff has sufficiently demonstrated that the action is maintainable under
13 Rule 23(b)(3).  This provision requires the Court to find that: (1) "the questions of law or
14 fact common to class members predominate over any questions affecting only individual
15 members," and (2) "a class action is superior to other available methods for fairly and
16 efficiently adjudicating the controversy."  These requirements are called the
17 "predominance" and "superiority" requirements.  See Hanlon, 150 F.3d at 1022-23.  Courts
18 have found that these requirements are generally satisfied in wage and hour class actions.
19 See, e.g., Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding
20 predominance, despite minor factual difference between individual class members, where
21 the case involved "alleged policies that required class members to work without
22 compensation, meal and rest periods, and/or reimbursement for expenses"); In re Wells
23 Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007)
24 (finding predominance where, as a general matter, the defendant's policy and practice
25 regarding compensation and exemption was uniform for all putative class members);
26 Gardner v. GC Servs., LP, No. 10cv0997-IEG (CAB), 2011 WL 5244378, at *5 (S.D. Cal.
27 Nov. 1, 2011) (finding that Rule 23(b)(3) was satisfied where "the claims stem from GC
28

Services' alleged uniform policy of requiring account representative to perform certain pre-shift, post-shift, and lunch time tasks without compensation . . . .").

In sum, the record is sufficient to support conditional certification of the class under Rule 23(a) and (b)(3).

### C.   CLASS NOTICE

Where a proposed settlement has been reached by the parties, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).[3]  Notice must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir. 1980).  In order to satisfy due process considerations, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

Here, Plaintiff appropriately proposes mailing the Class Notice to Class Members by first class mail within ten days after receiving Class Member information from SelectQuote, to be followed by a reminder postcard for those Class Members who have not responded.  See Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 963 (3d Cir. 1983) (noting that notice by publication and mail has been found to be "clearly adequate").  In addition, the Class Notice adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and

---

[3] For classes certified under Rule 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Id. 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language":  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Id.

1 object, and the proposed fees and expenses to be paid to Plaintiff's counsel and the claims
2 administrator, among others.

3 The above notwithstanding, the Class Notice does not sufficiently notify Class
4 Members regarding the procedure for objecting to the settlement. The Notice should
5 indicate that objections must be *post-marked* by the specified deadline, state the objector's
6 name and address, specify the title and case number of this case, and state the reasons for
7 the objection. See McClellan v. SFN Group, Inc., No. C 10-5972 SBA, 2012 WL 2367905,
8 *5 (N.D. Cal. June 21, 2012). The Class Notice also should state that any objector desiring
9 to be heard at the fairness hearing must contemporaneously request permission to appear at
10 the hearing, and that the objector will not be allowed to present any argument or comment
11 at the fairness hearing unless he or she has timely objected to the settlement and
12 accompanied said objection with a request to appear. Id. Finally, the Class Notice should
13 afford Class Members up to sixty, as opposed to forty-five, days to submit their claim
14 forms or objection/notice of intent to appear at the fairness hearing. See Nielson v. Sports
15 Auth., No. C 11-4724 SBA, 2012 WL 5941614, *6 (N.D. Cal., Nov. 27, 2012). The class
16 notice shall be modified accordingly.

17 ### III. **CONCLUSION**

18 For the reasons stated above,

19 IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Preliminary Approval of
20 Class Action Settlement is GRANTED, as follows:

21 1. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the Court
22 conditionally certifies, for settlement purposes only, a proposed Settlement Class comprised
23 of: (a) a California Insurance Agent Class defined as "all persons who, at any time between
24 February 9, 2006 and March 31, 2012, were employed by Defendant as an Account
25 Manager (also called 'insurance agent') in State of California"; (b) the Nationwide
26 Insurance Agent Class, defined as "all persons who, at any time between February 9, 2006
27 and March 31, 2012, were employed by Defendant as an Account Manager in the United
28 States"; and (c) the Former Insurance Agent Class defined as "all persons employed by

1 Defendant as an Account Manager in the State of California and whose employment with
2 Defendant ended at any time between February 9, 2007 and October 9, 2012."
3     2.   Plaintiff Charles Burden is appointed as class representative.
4     3.   Gregory N. Karasik of the Karasik Law Firm and Alexander I. Dychter of
5 Dychter Law Offices, APC, are appointed as Class Counsel.
6     4.   Dahl Administration is approved as the Settlement Administrator.
7     5.   Within seven (7) days of the date this Order is filed, Plaintiff shall submit a
8 revised Class Notice which addresses the Court's concerns, as set forth *supra*.  The revised
9 Class Notice shall be redlined and/or highlighted to clearly indicate the modifications to the
10 original proposed Class Notice.  In addition, Plaintiff shall accompany their revised notice
11 with a proposed order approving the same.
12     6.   The Court directs mailing of the Class Notice, Claim Form and Reminder
13 Postcard by United States First Class Mail, in accordance with the Implementation
14 Schedule set forth below.  The Court finds that the deadlines selected in the Implementation
15 Schedule meet the requirements of due process and provide the best notice practicable
16 under the circumstances.

7. The Court orders the following Implementation Schedule for further proceedings:

| | |
|---|---|
| Defendant to provide Class Member information to the Claims Administrator | 10 days after Court approves revised Class Notice |
| Claims Administrator mails Class Notice to Class Members | 10 days after receipt by Claims Administrator of list of Class Members from Defendant |
| Claims Administrator mails Reminder Card to Class Members who have not responded. | 30 days after Class Notice is mailed. |
| Deadline for Claim Forms, requests for exclusion and/or objections to be postmarked. | 60 days after Class Notice is mailed. |
| Deadline for Class Counsel to file Motion for Final Approval and Attorneys' Fees and Costs | 35 days prior to Final Settlement and Approval Hearing |
| Final Settlement and Approval Hearing | **July 30, 2013 at 1:00 p.m.** |

IT IS SO ORDERED.

Dated: March 18, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge