UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHARLES BURDEN, individually and on behalf of other persons similarly situated,

    Plaintiff,

    v.

SELECTQUOTE INSURANCE SERVICES, a California corporation; and DOES 1 through 10,

    Defendants.

No. C 10-5966 LB

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## INTRODUCTION

Plaintiff Charles Burden and Defendant SelectQuote Insurance Services agreed to settle the claims in this class action lawsuit involving the alleged erroneous classification of insurance agents as exempt from California law and/or the Fair Labor Standards Act ("FLSA"). *See* First Amended Complaint ("FAC"), ECF No. 1-4 at 54; Motion for Final Approval of Class Action Settlement ("Motion"), ECF No. 106.[1] The district court previously conditionally certified the class, granted the unopposed motion for preliminary approval, and approved the proposed settlement notice. *See*

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the page.

ORDER (C 10-05966 LB)

ECF Nos. 100-04.[2] After complying with the notice requirements, Plaintiffs moved for final approval and for attorney's fees and costs. *See* ECF No. 106. The undersigned held a fairness hearing on August 1, 2013, and grants the unopposed motions. Because the requested amounts are fundamentally fair, adequate and reasonable, the court also awards $250,000.00 in attorney's fees, $13,868.83 in litigation costs, $8,575.00 in claims administration costs, and a $5,000 incentive award to the named plaintiff.

**STATEMENT**

The procedural facts are in the order granting preliminary approval of the class action settlement, and this order incorporates them by reference. *See* ECF No. 100 at 1-3.

Under the terms of the settlement agreement, SelectQuote will pay a non-reversionary gross settlement amount of $750,000. Settlement Agreement at 6. After deducting attorney's fees (up to $250,000), litigation costs (up to $20,000), incentive awards (up to $10,000), settlement administration costs (estimated at $9,000), and SelectQuote's share of payroll taxes arising from the settlement awards, the net settlement amount will be distributed to claimants in the following three subclasses:

a. The California Insurance Agent Class, defined as 'all persons who, at any time between February 9, 2006 and March 31, 2012, were employed by Defendant as an Account Manager (also called 'insurance agent') in the State of California';

b. The Nationwide Insurance Agent Class, defined as 'all persons who, at any time between February 9, 2006 and March 31, 2012, were employed by Defendant as an Account Manager in the United States;' [and]

c. The Former Insurance Agent Class, defined as 'all persons who were employed by Defendant as an Account Manager in the State of California and whose employment with Defendant ended at any time between February 9, 2007 and October 9, 2012.'

Settlement Agreement at 10-12, 20. Ninety percent of the net settlement amount will be distributed to the California Insurance Agent and Nationwide Insurance Agent classes. *Id.* at 20. Each member of these classes who submits a timely and valid claim shall be paid a settlement share "based on [SelectQuote's] calculation of the number of Eligible Overtime hours worked by each Class Member and the Class member's regular rate or rates of pay applicable to those overime hours worked." *Id.*

---

[2] The parties consented to the undersigned's jurisdiction, and the case was reassigned to this court. *See* ECF No. 109, 110, 113.

The remaining 10% of the net settlement amount will be divided equally among the Former Insurance Agent Class members who submit timely and valid claims. *Id.* Any unclaimed funds will be donated to the Legal Aid Society – Employment Law Center as a *cy pres* award. *Id.* at 24.

In return, the class members will release SelectQuote from liability for any and all claims that could have been asserted against SelectQuote

> arising out of or relating to unpaid wages, overtime pay, pay for all time allegedly worked but not compensated, improper wage statements, waiting time penalties, meal or rest break violations, unfair business practices, and practices, and all other claims of any kind for wages, penalties, interest, costs and attorneys' fees arising from the alleged violation of any provision of common law, California, Florida and/or Texas law and/or Federal law which were or could have been alleged as part of Plaintiffs claims, including but not limited to claims under California Labor Code sections 201, 202, 203, 204, 210, 218, 218.6, 224, 226, 226.3, 226.7, 227.3, 510, 512, 515, 551, 558, 1194, 1197, 1198, 2698 *et seq.* and 2802, California Business & Professions Code section 17200 *et seq.*, and 29 U.S.C. 18 §§ 207 and 216.

*Id.* at 8. The class member do not release claims for workers compensation, unemployment insurance, or ERISA benefits. *Id.*

After the district court's preliminary approval, conditional certification of the settlement class, approval of the settlement administrator, approval of the final correct class notice, and setting of the notice schedule, *see* ECF Nos. 100, 105, SelectQuote provided Dahl Administration, the claims administrator, with information that included the 252 originally-identified class members' names, addresses, telephone numbers, social security numbers, hire and termination dates, and "the employee specific data required to determine sub-class eligibility and calculate estimated settlement awards for each Class Member." Dahl Decl., ECF No. 106-4, ¶ 2. Dahl updated the addresses provided by running them through the National Change of Address database and then mailed the court-approved notice packets to the class members on May 13, 2013. *Id.* ¶¶ 6-7. On June 10, 2013, Dahl mailed reminder postcards to the class members who had not yet submitted a claim form or a request for exclusion. *Id.* ¶ 8. Sixteen notices were returned as undeliverable and Dahl sent these to a professional address search firm for tracing. *Id.* Updated addresses were found for thirteen class members and Dahl re-mailed their notice packets. *Id.* ¶ 9. Updated address information could not be found for three class members, so they were not notified of the settlement. *Id.*

On June 25, 2013, Plaintiff filed his motion for final settlement approval, attorney's fees, costs,

1 and an incentive award. Motion, ECF No. 106. Burden's motion was filed more than two weeks
2 before the deadline for class members to object. *See* Dahl Decl. Ex. A, ECF No. 106-4 at 8 (class
3 notice indicating a July 12, 2013 deadline to file objections).

On June 27 and July 11, 2013, Dahl mailed additional notice packets to a total of 13 newly-identified class members who were not included in the original class list. Suppl. Dahl Decl., ECF No. 108-2, ¶ 6. Dahl also established a toll-free settlement information line and e-mail address to provide additional information about the settlement. *Id.* ¶¶ 11-12.

As of July 17, 2013, Dahl had received no objections to the settlement and only one class member requested exclusion. Suppl. Dahl Decl., ECF No. 108-2 ¶¶ 7-8. Dahl received 202 claim forms, 196 were valid, and 6 were invalid because they were duplicate claims. *Id.* ¶ 9. This represents 74% of the 265 class members and 90% of the total available settlement funds. *Id.* At the hearing, the parties represented that as of the hearing date, no one objected to the settlement.

## ANALYSIS

### I. JURISDICTION

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1441(b).

### II. NOTICE

The court finds that the notice to the settlement class, in the amended form approved by the district court, *see* ECF Nos. 100 at 9, 102, & 105, provided the best practicable notice to the members of the class (reaching of class members) and satisfied the requirements of due process. As discussed above, the parties employed Dahl Administration, LLC, a claims administrator, to oversee the class notification process. As described above, Dahl mailed notices and reminder postcards to the class members, performed skip traces on all return mail, and verified that the validity of the submitted claims. The court finds that these procedures were adequate.

### III. CLASS CERTIFICATION

For the reasons and under the standards set forth in the district court's March 21 order, *see* ECF No. 100, the court finds that the proposed settlement class here still meets the requirements of Federal Rule of Civil Procedure 23(a) and (b). The court certifies the class members set forth above solely for the purpose of entering a settlement in this matter.

UNITED STATES DISTRICT COURT
For the Northern District of California

## IV. FINAL APPROVAL OF SETTLEMENT AGREEMENT

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." FRCP 23(e)(2). In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate. First, the strength of Burden's case militates in favor of settlement. SelectQuote "vigorously" opposed Burden's (non-settlement) class certification motion, making settlement an appealing option. *See* Motion, ECF No. 106 at 10. Second, litigation poses risks, and this litigation (as the docket sheet reveals) has been expensive and protracted. Given the likelihood that SelectQuote would appeal, this factor favors settlement. *See id.* Third, the amount offered in settlement (between $1,850 and $3,335 per class member) provides real benefits to the class and totals approximately 75% of Burden's estimated damages. *See* Karasik Decl., ECF No. 106-1, ¶¶ 11-13. This is a good result for the class in light of the defenses and appellate risks that experienced counsel have identified. *See* Motion at 10-11. Also, the settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel and after three settlement conferences with a magistrate judge. *See* Motion at 12.

The extent of discovery and stage of proceedings also support the settlement agreement. Before settling, the parties engaged in extensive discovery over several years. *See generally* Docket. The class counsel propounded discovery, the parties took depositions, and engaged in what the district court described as "significant motion practice and litigation beyond that which is typically observed

in wage and hour class actions." Preliminary Approval Order, ECF No. 100 at 6.

Finally, the reaction of class members to the proposed settlement strongly favors approval. An extremely high percentage of the class members submitted claim forms (74%). Suppl. Karasik Decl., ECF No. 108-1 at 2. No class members objected to the settlement and only one opted out. Suppl. Dahl Decl., ECF No. 108-2 at 2-3.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that final approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement.

## V. ATTORNEY'S FEES

Burden asks that the court award him $250,000.00 in attorney's fees, payable out of the gross settlement amount. Motion, ECF No. 106 at 13.

### A. Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Attorney's fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *Staton*, 327 F.3d at 964.

In "common fund cases," a court has discretion to award attorney's fees either as a percentage of such common fund or by using the lodestar method. *Id.* at 967-968. A district court in the Northern District reviewed a number of cases and concluded that using the lodestar method in common fund cases did not achieve the stated purposes of proportionality, predictability and protection of the class but, instead, encouraged abuses such as unjustified work and protracting the litigation. *See In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Additionally, the percentage-of-the-fund method is appropriate where – as here – the amount of the settlement is fixed without any reversionary payment to the defendant. *See Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16,2011). In the Ninth Circuit, the "benchmark" for attorney's fees in common fund class actions is 25% of the common fund. *Staton*, 327 F.3d at 968. "The benchmark percentage should be adjusted . . . when special

1  circumstances indicate that the percentage recovery would be either too small or too large in light of
2  the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Arizona Citrus*
3  *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
4  1048 (9th Cir. 2002) (explaining that the rate ultimately selected must be supported by findings that
5  take into account all of the circumstances of the case).

### B. Attorney's fees

Class counsel seeks one-third of the gross settlement fund, or $250,000, as an award of attorney's fees. Motion, ECF No. 106 at 13. Courts in the Ninth Circuit look to the following factors when determining what a proper percentage is for an award of attorney's fees: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-52.

Applying these factors to the documentation provided by counsel, and given the extensive litigation in the case and the successful results achieved, the court finds that an upward adjustment of the benchmark to 33% is warranted in this case. As to the results achieved, counsel obtained quality results in the form of a gross settlement amount of approximately 75% of the maximum damages available after significant motions practice. *See* Order, ECF No. 100 at 6. Counsel assumed substantial risk, litigated the case on a contingent basis, and are receiving fees that are fair considering those factors. Awarding fees at a rate higher than the 25% benchmark is appropriate in cases involving a relatively small settlement fund. *See* Fees Motion at 13-14 (collecting cases where the district court in this district awarded more than the 25% benchmark in common fund cases); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. Jul. 27, 2010) ($10M settlement fund) (collecting cases). The class reaction supports the award. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (finding factor favored approval where no objections to fee where raised in response to 57,630 copies of notice being sent).

The lodestar cross-check does too. The hourly rates ($700 for Gregory Karasik and $475 for Alexander Dychter) are reasonable given their qualifications and reasonable hourly rates in the San

Francisco marketplace. *See* Karasik Decl., ECF No. 106-1 at 7.[3] Mr. Karasik submitted detailed time records documenting how he expended his 270 hours reasonably. *See* Karasik Decl. Ex. 3, ECF No. 106-1 at 15-18. Mr. Dychter's declaration establishes 153 hours in the case, including depositions, settlement conferences, discovery responses, legal research, revisions and strategy, s*ee* Dychter Decl., ECF No. 106-2, ¶ 9, and given the extensive litigation that the docket reveals, *see* Order, ECF No. 100 at 3, the court concludes that the hours are reasonable.[4] Also, the $250,000 is less than the total lodestar value of $261,625. *See* Dychter Decl., ECF No. 106-2, ¶ 10.

## VI. LITIGATION COSTS

Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Class counsel seeks reimbursement of $13,868.83, which is less than the $20,000 maximum under the settlement agreement. *See* Motion, ECF No. 106 at 15. The submissions include records documenting $10,734.05 in costs, invoices from 8/1/2011 - 6/17/2013 for $1,417.51 for airfare, attorney services, transportation, and parking, and $1,717.27 in travel-related expenses. *See* Karasik Decl. Ex. 1, ECF No. 106-1 at 10-11; *id.* Ex. 2, ECF No. 106-1 at 13. The submissions support a total award of costs of $13,868.83.

## VII. INCENTIVE AWARDS

Representative Plaintiff Charles Burden asks for an "enhancement payment" (which the court refers to as an incentive award) of $10,000. Motion at 15. The district court must evaluate a named plaintiff's award using relevant factors including "the actions the plaintiff has taken to protect the

---

[3] Counsel provided only their own declarations regarding the reasonableness of the rates, which ordinarily is not sufficient, *see, e.g., Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1169 (N.D. Cal. 2012), but the court can rely on its own knowledge and experience regarding the reasonableness of the rates.

[4] It is a very close call as to whether Mr. Dychter's submissions are detailed enough to allow the court to determine that they are reasonable and thus support the lodestar cross-check. By contrast, Mr. Karasik's submissions made it easy to evaluate reasonableness.

interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

In its preliminary approval order, the district court noted that "Plaintiff's request for a $10,000 incentive award is double the amount which this Court has determined is presumptively reasoanble. ECF No. 100 at 6 (citing *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a requested $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable")). The district court did not resolve the matter, but advised Plaintiff to address these issues in his motion for final approval. *Id.*

Courts in this district frequently award $5,000 incentive awards, often in larger settlements than this one. *See, e.g., Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 incentive awards to 24 named plaintiffs in $27,000,000 settlement) *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount).

Mr. Burden argues that a $10,000 incentive award is justified because he was deposed twice, attended three settlement conferences, and spent a total of 80 hours on this case. Motion at 15-16. He notes that the average payment to the class members is between $1,850 and $3,335, and he asserts that incentive awards are typically "much higher than 3-5 times the average amount of class

member benefits." *Id.* The support for this assertion is his attorney's declaration. *See id.*; Karasik Decl., ECF No. 106-1, ¶ 14.

But courts often examine whether incentive awards are proportional to the range of settlement awards. *See Staton*, 327 F.3d at 976. For example, in *Wren*, the court specifically considered "whether the incentive payments are proportional to the Settlement Amount." 2011 WL 1838562, at *36. There, the court approved $5,000 settlement awards because some of the individual class members received more than $5,000. *Id.* at *37. Thus, "although the $5,000 incentive payment amount is greater than the average class member award, it is nonetheless within the range of settlement awards." *Id.*

Here, the $10,000 incentive award is nearly three times the largest amount paid to any class member, and even $5,000 exceeds the range of the class members settlements. Nonetheless, on this record, the court concludes that $5,000 (in addition to his claim as a class member) is an appropriate amount to compensate Mr. Burden for his efforts.[5]

## VIII. SETTLEMENT ADMINISTRATION FEES

The settlement agreement said that fees Dahl's fees will total approximately $9,000. *See* Settlement Agreement, ECF No. 96 at 9. Kristin Dahl's declaration establishes that the "final total fees and expenses for this settlement will be $8,575." Dahl Decl., ECF No. 106-4, ¶ 16. This is reasonable and the court awards it.

## V. CONCLUSION

The court approves the settlement in the total amount of $750,000.00 and awards $250,000.00 in attorney's fees, $13,868.83 in litigation costs, $8,575.00 in claims administration costs, and a $5,000 incentive award to the named plaintiff Charles Burden.

This disposes of ECF No. 106.

**IT IS SO ORDERED.**

Dated: August 1, 2013

LAUREL BEELER
United States Magistrate Judge

---

[5] A different kind of case where the named plaintiff's efforts are more integral to the litigation might support the approach counsel urges, but this is not that kind of case.